**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

FILED
IN CLERK'S OFFICE

2002 SEP -4  P 2: 57

| | |
|---|---|
| RAYMOND SCOTT, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MACY'S EAST, INC., KENNETH SANABRIA, | ) |
| KIMBERLY JONES, JOHN OULLETTE, | ) |
| RUSSELL JENKINS, and the TOWN OF | ) |
| BRAINTREE, | ) |
| | ) |
| Defendant, | ) |

Civil Action: 01-10323-NG

U.S. DISTRICT COURT
DISTRICT OF MASS.

## DEFENDANTS MACY'S EAST, INC., KENNETH SANABRIA, AND KIMBERLY JONES REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

Defendants Macy's East, Inc., Kenneth Sanabria and Kimberly Jones ("Macy's) hereby submit this memorandum of law in reply to Plaintiff's Opposition to Defendants Motion for Summary Judgment.  For the reasons stated herein, Motion for Summary Judgment on Behalf of Macy's East, Inc., Kenneth Sanabria, and Kimberly Jones ("Defendants Motion for Summary Judgment") should be granted because there are no material issues of fact in dispute and because Macy's is entitled to judgment as a matter of law on all Plaintiff's claims.



## II.   REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

### A.   STATEMENT OF MATERIAL FACTS

Based upon Plaintiff's Statement as to Defendants, Macy's East, Kenneth Sanabria, And Kimberly Jones Statement Of Material Facts, ("Plaintiff's Statement"), it is clear that no material issues of fact are in dispute in this case.

A review of Plaintiff's objections to Defendants' Statement of Material Facts As to Which There Is No Genuine Dispute In Support Of Motion For Summary Judgment On Behalf Of Macy's East, Inc. Kenneth Sanabria, and Kimberly Jones ("Defendants' Statement") reveals, that Plaintiff disputes are unsupported by the record or are immaterial.  Accordingly, the material facts of this case dictate that, Defendants Motion for Summary Judgment should be allowed.

In paragraphs "5", "6" and "8" Plaintiff denies that Raymond Scott ("Plaintiff" or "Scott") did not look at price tags and that he was shopping in a "rapid" manner.  However, Plaintiff's own deposition testimony reveals, "price didn't matter" on the day in question and his shopping pattern is to get in and out without wasting any time. Deposition of Raymond Scott ("Scott Dep."), pp. 38, 39.   Indeed, he did not waste any time, he gathered and purchased "a lot of items" that totaled approximately, "$750 or 60" worth of merchandise within 15 to 20 minutes[1]. Scott Dep. pp. 38-40.   Accordingly, Plaintiff's purported dispute in paragraphs "5", "6", and "8" of Plaintiff's Statement is unsupported by the record.

---

[1] The Plaintiff testified to the following:

Q.   If I told you that you purchased 17 items that evening from the men's department would that sound right?

A.   I know it was a lot of items, I don't know if it was 17.  I know it came up to $750 or 60.

Q.   Now, did you place the items as you gathered them on a counter, or did you continue to hold them for the entire time until you went to the register?

A.   We would get items bring them to the counter and leave them there, and go back, gather more items and bring them to the counter.

Plaintiff's objection to paragraphs "11", "12", "13" and "14" are not supported by the facts and are not material. At the heart of Plaintiff's objection is that Kenneth Sanabria ("Sanabria") did not say that he was with Kimberly Jones ("Jones") when he made his initial observations of the Scott and Trevor Watson ("Watson"). His answer was in response to the question, "[w]hen did you first notice anything?" Kenneth Sanabria Deposition ("Sanabria Dep.") pp. 8,9. He was never asked who he was with. More importantly, the materiality of paragraphs "11", "12","13" and "14" is that three individuals observed the Plaintiff and Mr. Watson gathering a lot of merchandise in a short amount of time. Sanabria Dep. pp. 12-14; Jones Dep. pp. 12, 14. And as previously stated, this shopping behavior was confirmed by the Plaintiff's own testimony. Scott Dep. pp.38-40.

Plaintiff objects to paragraph 20 based on the fact that only Jones testified to observing Scott and Watson separating merchandise purchased on the American Express card. Plaintiff further argues that paragraph 20 in its entirety should be thrown out because of the purported factual inconsistencies in the sequence of events. Again, it is important to note that notwithstanding Plaintiff's objection, the material facts in paragraph 20 have gone undisputed. The significance of paragraph 20 is that, Scott and Watson split-up merchandise that was purchased on the one American Express card and it was this conduct, *inter alia*, that heightened Jones and Sanabria's suspicions. Moreover, beyond Plaintiff's argument that Jones' and

---

| Q. | Would you look at the price, or did price not matter to you? |
| A. | At that time price didn't matter. |

---

| Q. | Was time an issue for you? |
| A. | I just don't like being in stores too long. I'm just, you know, I didn't have to rush back or anything to the studio. But I'm a general shopper, I go in and know what I want and get it and leave. |
| Q. | So your shopping pattern or behavior is to get in and out and not waste any time? |
| A. | Especially if we know what we wanted. We knew we needed shorts and T-shirts for the Vineyard. |

Scott Dep. pp. 38-39.

Sanabria's exact sequence of events vary, Plaintiff has failed to present any evidence to the contrary.

Plaintiff objects to paragraph 30 on the grounds that Jones instructed Sanabria to call the Braintree Police. Defendant submits that this was a collaborative effort and as such is supported by facts. Notwithstanding the above, Defendant submits, whether or not Sanabria telephoned the Braintree Police at Jones' instruction, is immaterial.

Plaintiff objects to paragraph 37 and denies that the Braintree Police were informed of the Plaintiff's shopping behavior by Sanabria. Sanabria testified during his deposition that he informed the Braintree Police of his observations of Scott and Watson's "pattern of behavior." In response to Mr. Robinson's question, whether he told the dispatcher everything, Sanabria stated, "I'm not sure if I told them the shopping pattern. I told the police officers when they got there but I can't remember the conversation with the dispatcher." Sanabria Dep. pp.47. In response to Mr. Robinson's inquiry about the substance of Sanabria conversation with the Braintree Police, Mr. Sanabria testified that, "[a]gain, I told them what I had seen in the store about the shopping behavior. You know, shopping in a rapid manner without regard to price. I told them everything that I had seen." Sanabria Dep. pp. 48-49. Accordingly, Plaintiff's objection is not supported by the record.

Macy's does not object to Plaintiffs rendition of paragraph 38 and submits that they are undisputed.

Plaintiff objects to paragraph 39 and states that Scott did provide the Braintree Police with his identification upon request. It should be noted that Plaintiff only provided the police with his identification after several requests and never provided the police with the American Express card. Russell Jenkins Deposition ("Jenkins Dep.") p. 43. As such, Plaintiff failed to

4

provide the identification requested by the police[2].   Accordingly, there is no dispute as to material facts in paragraph 39.

---

[2] Based on Scott and Jenkins' deposition testimony, it is clear that Scott initially did not provide his ID to Jenkins. Furthermore, based on Jenkins' testimony, Scott never produced the American Express card.

The following is the relevant parts of Scott's testimony:

| | |
|---|---|
| Q. | And then he asked you for your ID? |
| A. | Yes. |
| Q. | Did you give him your ID? |
| A. | After I asked him again why, and then once I presumed of the situation about Macy's and I actually offered him to go in to let him know that Macy's was on the phone – I mean American Express was on the Phone, and he could go in and clear it up.  I already presumed he there because Macy's had called before I gave him any ID. I gave him an opportunity to go in there and speak. |

| | |
|---|---|
| Q. | So what happened next? |
| A. | He wanted my ID.  He looked like he didn't care about what I said he was just on this mission from what Macy's called him for. |

| | |
|---|---|
| Q. | So he keeps asking for your ID.  Did you eventually give him your ID? |
| A. | Yes. |

Scott Dep. pp. 67-71

The following is the relevant portions of Lieutenant Russell Jenkins's testimony.

| | |
|---|---|
| A. | … I'm not getting the credit card from Mr. Scott. He is thrusting it in my face and he won't give it to me. I don't have it many [sic] my hand.  He was Raymond Scott or the credit card is a credit card issued to Raymond Scott.  The reality is that throughout this whole endeavor was I was trying to protect the interest of some guy named Raymond Scott. |

Jenkins' Dep. p 43.

### B.   ARGUMENT IN REPLY TO PLAINTIFF'S OPPOSITION

#### 1. JUDGMENT AS A MATTER OF LAW SHOULD BE GRANTED FOR DEFENDANT ON PLAINTIFF'S CLAIM UNDER M.G.L. C.12 §§11H, OR 11I.

##### a. Plaintiff's Has Failed To Present Any Evidence That A Right Guaranteed Under State or Federal Law Was Interfered With.

As an initial matter, it is clear that Plaintiff's rights under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c.12, s.11H or 11I, have not been violated, as Plaintiff concedes that Scott shopped at Macy's and at Champs without incident. Plaintiff's Statement, ¶¶ 29, 40, 41. Furthermore, Plaintiff, in paragraph 38 of Plaintiff's Statement, admits that there was no interference with Scott's use of the American Express card.[3] Plaintiff presented no evidence that Macy's treated Scott differently because of his race. To the contrary, the facts are undisputed that Sanabria, a Puerto Rican male[4], and Jones, a white female, conducted an investigation based on Scott and Watson's shopping pattern. Defendants' Statement, ¶¶ 5,6,7,12,13, 15, 16, 19, 23. Plaintiff's failure to present specific factual evidence that a right guaranteed under State or Federal law was interfered with necessitates dismissal of this claim. *See Jones v. City of Boston*, 738 F.Supp. 604, 605-6 (D.Mass. 1990) (Court held hotel manager's request for plaintiff to leave was insufficient to state claim under MCRA. However, evidence that bartender called plaintiff a

---

[3] The relevant portions of paragraph 38 of Plaintiff's Statement of Material Facts are provided below.

> Mr. Scott testified at his deposition that after he saw Mr. Watson being detained by Braintree Police, (Scott) *handed the telephone back to the sales person at Lady Foot Locker and believed that she would stay on the telephone and resolve the issue and therefore Mr. Scott left the Lady Foot Locker* to see what the problem was with Mr. Watson.... Furthermore, Mr. Scott was asked if he had used the American Express since the incident which serves as the basis of the *matter sub judice*, and he said 'yes' that he had no subsequent problems. (citation omitted). The fact that Mr. Scott had no further problems with his use of his American Express card would imply that the issue of his use of the card had been resolved.

Plaintiff's Statement, ¶ 38.

[4] It is also relevant to note that Raymond Scott is Puerto Rican and Cape Verdi.  Scott Dep. p.7.

"nigger" was sufficient to show that plaintiff's right to be free from discrimination in a place of public accommodation was interfered with.)

### b. The Macy's Defendants Were Not Joint Venturers With The Braintree Police Department.

Assuming arguendo that Plaintiff has established his rights under state of federal law were interfered with, Plaintiff claim still must fail. It is undisputed that the Macy's engaged in no conduct which constituted "threats, intimidation or coercion" within the meaning of M.G.L. c.12, §§11H, or 11I ("MCRA") on their own. Rather, Plaintiff attempts to bootstrap it's claim against Macy's by asserting that Macy's is liable under a theory of "joint venture". However, the cases cited by Plaintiff, give precious little support for the application of the "joint venture" theory in this instance.

In *Bell v. Mazza*, 394 Mass. 176, 184 (1985), the court determined that the defendants' actions *after* the formation of the neighborhood association (which constituted threats, intimidation or coercion) allowed for the inference that the defendants had engaged in a joint venture with the goal of interfering with the plaintiff's property rights. *Bell v. Mazza*, 394 Mass. at 184 (emphasis added). The court held all the members of the neighborhood association liable as joint venturers and stated, "each is the agent or servant of the others." *Id*

In *Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86 (1999), the doctrine of joint venture was again applied to a claim under the MCRA. In *Sarvis*, two employees of Boston Safe Deposit and Trust, Co., provided false information to the Nantucket Police pressing them and "fully expecting that the plaintiff's would be arrested if the police saw them" on the property in issue. *Id*. at 92. In holding Boston Safe Deposit and Trust Co., was a joint venturer with its employees, the court stated, "[a]lthough the defendants themselves did not arrest the

7

plaintiffs or place the telephone call that precipitated the actual arrest, *the arrests for trespassing were made at their direction*, without which there likely would have been no such arrests." *Id.* at 92 (emphasis added).

Here, no reasonable juror could conclude that the plaintiff's arrests or other acts of threats, intimidation or coercion were at the direction of the Macy's Defendants. Clearly, the Braintree Police were not acting under Macy's instruction or direction and certainly could not be deemed Macy's agents. As the Plaintiff correctly points out, Macy's employees only "relayed" their observations. Plaintiff's Opposition p. 14. Macy's communication with the Braintree Police was informational and at most a request to redress a possible grievance. *Id.* 183. And as such, Macy's conduct is not actionable under MCRA. *Id.*

Moreover, as a general rule, "where an officer is in performance of his public duties,... or where a *defendant does no more than narrate the material facts to the officer* and leaves to him what he will do,... a defendant is not liable for the action of the officer". *Cf., Kidder v. Whitney*, 336 Mass. 307, 308, 309 (1957) (internal citations omitted) (emphasis added). Contrary to Plaintiff's assertion, after the Braintree Police were informed of the observations made by the Macy's employees, the Braintree Police began their own investigation.[5] Jenkins Dep. 24, 18, 24, 43. Furthermore, unlike the facts in *Sarvis*, where the defendants' knowingly gave false information to effectuate the arrests of the plaintiffs, Macy's communicated their truthful

---

[5] Lt. Russell Jenkins testified to the following in his deposition:

Q:    What were you intending to do?
A:    Investigate the allegation or whatever you want to call it; that the card was stolen; the suspicion that the card was stolen.

Jenkin's Dep. p. 24.

observations of Scott and Watson to the Braintree Police[6]. Defendants Statement, ¶ 32, 37. Given that Macy's actions were neither in violation of MCRA nor in concert with the Braintree Police as joint venturers, Plaintiff's claim must be dismissed.

### 2. PLAINTIFF HAS FAILED TO ESTABLISH THAT MACY'S VIOLATED THE MASSACHUSETTS PUBLIC ACCOMMODATIONS LAW, M.G.L. C. 272, S. 98.

It is axiomatic that evidence which is inadmissible at trial is insufficient to defeat a motion for summary judgment. *National Center for Jewish Film, Inc. v. Goldman*, 943 F.Supp. 113, 119 (1996), citing *Garside v. Osco Drug. Inc.* 895 F. 2d 46, 50 (1st Cir. 1990). After conceding that Scott successfully purchased all of his items in Macy's, Plaintiff attempts to sustain its burden by reciting a conversation Scott had with an American Express representative. Plaintiff's Opposition, p. 16, citing Scott Dep. p. 56. Plaintiff does so in vain. Specifically, Plaintiff submits that, "Mr. Scott testified that when he spoke with the representative from American Express, that representative told him that the employee from Macy's stated that '[T]wo **black** men were fraudulently using the card.'" *Id.*

Clearly, the double hearsay statement of the American Express representative[7] is inadmissible at trial and therefore cannot be taken into consideration for this motion. *See Weston-Smith v. Cooley Dickinson Hospital, Inc.*, 153 F.Supp. 2d. 62, 69 (D.Mass. 2001) (Statement made by employee allegedly made to plaintiff in a Title VII discrimination case and

---

[6] Plaintiff misunderstands Macy's argument and its purpose for citing *Sarvis*. Macy's does not dispute that Sarvis did not specifically hold that a plaintiff had to show that a defendant knowingly provided false information in every circumstance to prove liability under MCRA. Rather, in this instance, where the facts are undisputed that Macy's never told the Braintree Police to arrest Scott, the only way plaintiff could establish liability is by showing Macy's "enlisted the unwitting aid of the police by giving them false information." *Sarvis*, 47 Mass. App.Ct. 86, 94 (1999).

[7] It should also be noted that it is unlikely that the Plaintiff will be able to produce the American Express representative at Trial. The Plaintiff did not get a first name and only identified the representative as a "Mr. Brown." Scott Dep. pp. 55-6.

FMLA action, which reiterated statements made by another employee to employer, were double hearsay and not admissible for summary judgment purposes); *Pakizegi v. First National Bank of Boston, 831 F.Supp.* 901, 909 (D. Mass. 1993) (Allegation that former supervisor told plaintiff that Bank manager did not like her because she was Iranian was double hearsay and could not be considered in Title VII action). *See also, Vicker v. Federal Express Corporation*, 132 F. Supp.2d 1371, 1378 (S.D.Florida 2000) (Former employee's testimony that he was told by unnamed coworker that supervisor called him a "black bastard" was inadmissible hearsay in his 42 U.S.C.A. s. 1981 claim against former employer.); *Upshaw v. Dallas Heart Group, A Professional Association*, 961 F.Supp. 997, 1000 (N.D.Texas 1997). However, even assuming the statement is admissible, Plaintiff's claim still fail since the statement "two black males" was only used as a general description. *See Nevin v. Citibank*, 107 F.Supp. 2d 333, 349 (S.D.N.Y. 2000). Accordingly, in the absence of any evidence to support Plaintiff's claim, Plaintiff's claim must be dismissed.

### 3.   PLAINTIFF HAS FAILED TO SHOW THAT MACY'S FALSELY IMPRISONED SCOTT.

Contrary to Plaintiff's contentions, Plaintiff's false imprisonment claim against Macy's cannot stand for the following reasons. First, Plaintiff was not "imprisoned" by Macy's; Second, Macy's actions were privileged under MGL c.231 §94B. Plaintiff has failed to meet its burden of showing that Macy's falsely imprisoned Plaintiff by using the Braintree Police as its agents. *See Witham v. Gregory & Read*, 243 Mass. 595, 597 (1923). There is no evidence that "the police did not act entirely on their own judgment and in the performance of their duties as public officers in making the arrest[]." *Id.* And contrary to the Plaintiff's assertion, the record supports

the fact that the police, based on the information given by Macy's, conducted their own investigation. Russell Jenkins' Deposition, ("Jenkins Dep.") pp. 18, 24, 43, 45.     More importantly, Scott's admission to sufficient facts to the criminal charge of disorderly and a guilty plea to the charge of resisting arrest eradicates any doubt that Scott's detainment was unlawful. Scott Dep. p. 166-168. *See D. Hopkins v. Medeiros,* 48 Mass.App.Ct. 600, 613 (2000) (Court held that an "'[a]dmission to sufficient facts may be introduced against the defendant in a subsequently litigated civil suite arising out of the same incident on the theory that the proceeding was the functional equivalent of a guilty plea, with the same degree of finality.'") (internal citation omitted). Plaintiff is hard pressed to argue that he was unlawfully imprisoned in light of his admission to sufficient facts and guilty plea to the offenses he was arrested for on the night in question. Moreover, for the reasons stated in this Reply, as well as the reasons set forth in Defendant Motion for Summary Judgment, Plaintiff's claim should be denied.

However, in response to Plaintiff's argument that Macy's was an agent or a joint venturer of the Braintree Police (and assuming arguendo that Plaintiff has established the same), Macy's states that Plaintiff's claim for false imprisonment must still fail, as Macy's actions were privileged under MGL. c.231 §94B. The relevant portion of MGL.c231 § 94B state:

> In an action for false arrest or false imprisonment brought by any person by reason of having been detained for questioning on or in the immediate vicinity of the premises of a merchant or innkeeper, if such person was detained in a reasonable manner and for not more than a reasonable length of time by a person authorized to make arrests or by the merchant or his agent or servant authorized for such purpose and if there were reasonable grounds to believe that the person so detained was committing or attempting to commit,…larceny of goods for sale on such premises or larceny of the personal property of employees or customers or other present on such premises, it shall be a defense to such action.

M.G.L. c.231, s.94B.

11

It is clear that Macy's actions fall securely within this defense. First, based on Scott's and Watson's shopping pattern, Macy's had reasonable grounds to believe that the American Express card may possibly have been stolen. *Coblyn v. Kennedy's, Inc.*, 359 Mass. 319, 323 (1961) (Court held that reasonable grounds is the same objective standard as probable cause). Clearly, Macy's had reasonable grounds to believe that the card maybe stolen based on their observations. Defendants Statement ¶¶ 5,6,7, 12, 13, 15, 16, 19, 23. Lt. Jenkin's own assessment of Scott's shopping pattern, as relayed by the Macy's employees, supports Macy's suspicions. Lt. Jenkin's testified during his deposition that, "[i]t's a common frenzy shopping. People come in and in a short amount of time they select hundreds of dollars worth of merchandise. I would suggest that no one in this room here typically goes to a department store with a companion other than a spouse and says, 'Here I'll will put those on my card too.' That in and of itself is unusual." Jenkins' Dep. p 18.

Second, although, Macy's played no role in Scott's detainment nor had any authority to dictate the manner in which Scott was detained, Macy's submits that the manner and time in which Scott was detained was reasonable. *See generally, Proulx v. Pinkerton's National Detective Agency, Inc.*, 343 Mass. 390 (1961). The reasonableness of the detainment is demonstrated by the brief uneventful detainment of Scott's companion, Watson. Jones Dep. p. 65. The same inquiries were made of both men with two completely different outcomes. *Id.* Clearly, Mr. Watson's non-eventful detainment is evidence that Mr. Scott's unreasonable behavior caused his detention. *Id.* It was only after Scott was repeatedly told to calm down and after Scott removed his watch, that Scott was taken into custody for charges unrelated to the suspected credit card fraud. Scott Dep. p. 142. Again, had Scott cooperated, as his companion Watson had, Scott's detainment would have been momentary. Given that the police acted upon

12

their own accord and that their actions, if attributable to Macy's, were privileged, Plaintiff's claim must be dismissed.

### 4.   PLAINTIFF HAS FAILED TO PRESENT ANY ADMISSIBLE FACTS TO SUPPORT ITS CLAIM FOR SLANDER

Plaintiff has utterly failed to present any evidence to support its claim for slander against Macy's. "[P]ursuant to Fed.R.Civ.P. 56(e), [Plaintiff] 'may not rest upon the mere allegations or denials of the [defendant's] pleadings, but ...must set forth the specific facts showing that there is a genuine issue for trial.'" *See Humiston v. Atotech USA, Inc.,* 1995 WL 708660 at*4 (D. Mass. 1995) (Court held plaintiff failed to show a genuine issue of material fact on his defamation claim when he only presented deposition testimony of a hearsay statement).   Once again, Plaintiff relies solely on Scott's deposition testimony that an American Express representative stated that a Macy's employee stated that "two black men were fraudulently using the card."   As previously explained, hearsay is insufficient to survive a proper motion for summary judgment. *See Fitzgerald v. Town of Kingston,* 13 F.Supp.2d 119, 126-127 (D. Mass. 1998) (Court held plaintiff's reliance on newspaper article as basis for defamation claim was inadmissible hearsay and therefore insufficient to survive summary judgment).   Since Plaintiff has not met its burden, Plaintiff's claim, as a matter of law, must be dismissed.

### 5.   PLAINTIFF HAS NOT ESTABLISHED THAT MACY'S IS LIABLE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Contrary to Plaintiff's assertions, Plaintiff has failed to meet any of the elements of Intentional Infliction of Emotional Distress. In the interest of brevity, Macy's will only respond to Plaintiff's arguments that Macy's conduct constituted extreme and outrageous behavior. As

13

previously stated Plaintiff has failed to show that Macy's and the Braintree Police were working in concert or that the Braintree Police were Macy's agent.   It is also quite evident that there are no facts to support the proposition that Macy's actions were motivated by race. Notwithstanding, the hearsay statement, which is inadmissible, Plaintiff has not presented any evidence of any racial motives by Macy's.  With the hearsay statement omitted, Plaintiff is left with Macy's employees observing the Plaintiff. And it is evident that Macy's actions of observing Scott and Watson are insufficient to rise to level of extreme and outrageous conduct. See *Thorpe v. Mutual of Omaha Insurance Co.,* 984 F.2d 541, 545 (1st Cir. 1993). According, Plaintiff's claim must be dismissed.

### 6.  PLAINTIFF HAS FAILED TO ESTABLISH THAT MACY'S WAS NEGLIGENT

Plaintiff unpersuasively argues that Macy's owed Plaintiff a duty of care under the MCRA and Massachusetts Public Accommodations law.  And for the reasons previously stated in this Reply, Plaintiff's claim must fail.

Additionally, Plaintiff's farfetched argument that Scott's reaction was foreseeable and a "logical and legal conclusion to the chain of events which [Macys's] place[d] in motion," is completely undermined by, Watson's reasonable and foreseeable reaction to the Braintree Police's inquiry. Jones Dep. p.65.   Watson's reasonable and foreseeable reaction to the Braintree Police's inquiry is evidence that Scott's behavior was the intervening and superseding causes. See *Poskus v. Lombardo's of Randolph, Inc.,* 423 Mass. 637, 638-40 (1996).  Moreover, Plaintiff's own admission to sufficient facts and guilty plea to the criminal charges that resulted from his criminal behavior is further evidence that his conduct was the intervening and

14

superceding causes.   Scott Dep. pp. 166-68. *D. Hopkins,* 48 Mass. App. Ct., at 613.
Accordingly, Plaintiff's claim must be dismissed.

### 7. PLAINTIFF HAS FAILED TO ESTABLISH A CLAIM UNDER M.G.L. C.93A

Contrary to Plaintiff's beliefs, Plaintiff has presented no evidence of any racial
harassment or any different treatment based on race.   To reiterate, Plaintiff's hearsay statements
are not sufficient to survive a motion for summary judgment. *National Center for Jewish Film,
Inc.,* 943 F.Supp. 113, 119 (1996), citing *Garside v. Osco Drug. Inc.*  895 F.2d 46, 50 (1st Cir.
1990).   Moreover, Plaintiff's failure to show that Macy's actions fall within "at least the
penumbra of some common law, statutory, or other established concept of unfairness, or
immoral, unethical, or oppressive or unscrupulous" conduct is fatal to its claim. *Compagnie de
Reassurance d'Ile de France v. New England Reinsurance Corp.,* 825 F.Supp. 370, 381
(D.Mass. 1993*, aff'd in part, vacated on other grounds* 57 F.3d 56, *amended on denial of reh'g,
cert. denied* 116 S.Ct.564, on remand 944 F.Supp. 986.   Accordingly, Plaintiff's claim must be
dismissed.

### 8. PLAINTIFF HAS FAILED TO MAKE OUT A CLAIM UNDER 42 U.S.C. §1981

#### a)     No Contractual Rights were Violated:

Similarly, Plaintiff fails to establish that Scott's ability to enter into and enforce a
contract was violated under Section 1981.   Nor was Scott deprived of the benefit of his bargain
in any contractual relationship with either Macy's or American Express.   In his complaint,
Plaintiff identifies the contractual benefit interfered with as "the expectation that this contractual
relation with Macy's would not adversely affect his credit in general and the viability of the

15

arrangements with American Express to provide credit for purchases." Plaintiff's Complaint, ¶ 40.

It is undisputed that Plaintiff's ability to obtain credit for purchases suffered no interference. Plaintiff's own testimony and Plaintiff's own Statement of Material Facts establish that neither his credit "in general" nor the "viability of the arrangement with American Express to provide credit for purchases was adversely affected." Plaintiff's Complaint, ¶ 38. In his deposition, Plaintiff testified that when he presented his American Express card for the purchases at Lady Footlocker, the salesperson said "it's not a problem" (Scott Dep. p. 54); and that she had to call to "verify" the card holder (*Id.*); that Plaintiff replied "that's not a problem" (*Id.*); that while he was on the telephone identifying himself to American Express, he left the conversation in the middle of it to check on his friend who was talking to the Braintree Police outside the store (*Id.* at 59); that he gave the phone back to the salesperson and assumed she cleared everything up (*Id.* at 61); and that he was able to make purchases with his American Express card thereafter without a problem (*Id.* at 62). In his Statement of Material Facts Plaintiff states that "the fact that Mr. Scott had no further problems with his use of his American Express card would imply that the issue of his use of the card had been resolved." Plaintiff's Statement, ¶¶ 38, 39.

Thus, no reasonable juror could conclude from these undisputed facts that Macy's conduct adversely affected his credit or the viability of the arrangements with American Express to provide credit for purchases. No contractual rights or privileges were interfered with and Plaintiff was never deprived of the benefit of the bargain. *Garrett v. Radio Shack*, 295 F. 3d 94 (1st Cir. 2002); *Nevin v. Citibank N.A.*, 107 F. Supp. 2d 333, (SDNY 2000). Accordingly, Plaintiff's claim should be dismissed.

**b)** <u>**No Admissible Evidence of Race Discrimination**</u>

Contrary to Plaintiff's contentions, its claim must fail because there is no evidence of any treatment based on race under 42 U.S.C. §1981 ("Section 1981"). See *Alexis v. McDonald's Restaurants of Mass., Inc.,* 67 F.3d 431, 347-48 (1ˢᵗ Cir. 1995).   As previously indicated Plaintiff's only support for any racial animus is the hearsay statement allegedly made by the American Express representative.  On that basis alone, Plaintiff's claim should be denied. See *Garside v. Osco Drug. Inc.* 895 F.2d 46, 50 (1ˢᵗ Cir. 1990).

**9.   PLAINTIFF HAS FAILED TO MAKE A CLAIM THAT MACY'S VIOLATED THE PLAINTIFF'S EQUAL PROTECTION RIGHTS**

Plaintiff's assertion that Macy's violated his rights under 42 U.S.C. § 1982 are not supported by the fact.  Contrary to Plaintiff's assertion that there is "amble evidence to suggest that race did in fact play the major part in Macy's employee decision to contact both American Express as well as the Braintree Police department", no such evidence has been produced.  The hearsay statement made by the American Express representative is clearly not admissible. Plaintiff's Opposition, p. 33.  Absent any support for different treatment based on the Plaintiff's race, Plaintiff's claims cannot survive summary judgment. See *National Center for Jewish Film, Inc. v. Goldman,* 943 F.Supp. 113, 119 (1996), citing *Garside v. Osco Drug. Inc.* 895 F. 2d 46, 50 (1ˢᵗ Cir. 1990). See also *Fitzgerald v. Town of Kingston*, 13 F.Supp. 2d 119, 127 (D. Mass. 1998); *Humiston v. Atotech USA, Inc.,* 1995 WL 708660 at *4 (D. Mass. 1995).   Accordingly Plaintiff's claim must be dismissed.

10. **PLAINTIFF HAS FAILED TO MAKE A CLAIM THAT MACY'S VIOLATED THE PLAINTIFF'S RIGHTS UNDER THE FEDERAL PUBLIC ACCOMMODATIONS LAW.**

Contrary to Plaintiff's assertions, there are no facts to support that Plaintiff was targeted for surveillance because of his race. Additionally, Plaintiff also fails to put forward any evidence on how his rights were violated. Plaintiff concedes that he entered and shopped at Macy's without incident. Plaintiff's Opposition, p. 34. *See also Nevin,* 107 F.Supp.2d at 348. Accordingly, as previously explained above, Plaintiff's failure to present specific factual evidence dictates that Plaintiff's claims be dismissed.

### III.   CONCLUSION

For the foregoing reasons, defendants Macy's East, Inc., Kenneth Sanabria, and Kimberly Jones respectfully request that this Court grant summary judgment in their favor on all counts of the plaintiff's complaint and dismiss the complaint against them in its entirety, along with such other relief as to this Court seems just and proper.

Respectfully submitted,

MACY'S EAST, INC., KENNETH SANABRIA, AND KIMBERLY JONES,

By their attorneys,

Robert P. Joy, Esq. (BBO # 254820)
Grace H. Lee (BBO # 630268)
Maura D. McLaughlin, Esq. (BBO #634923)
        MORGAN, BROWN & JOY, LLP
        One Boston Place
        Boston, Massachusetts 02108
        (617) 523-6666

Dated: September 4, 2002

18

## CERTIFICATE OF SERVICE

I hereby certify that I have this   4th day of September 2002, served a true and accurate copy of the foregoing by overnight mail upon:

Martin K. Leppo, Esq.
*Counsel for Plaintiff*
LEPPO & LEPPO
15 South Main Street
Randolph, Massachusetts 02368

- and-

Anthony J. Siciliano, Esq.
*Counsel for Plaintiff*
ANTHONY J. SICILIANO, P.C.
115 State Street, Suite 403
Springfield, Massachusetts 01103

- and -

William P. Breen, Jr. (BBO #558768)
*Counsel for John Oulette, Russell Jenkins, and Town of Braintree*
MURPHY, HESSE, TOOMEY & LEHANE, LLP
300 Crown Colony Drive
P.O. Box 9126
Quincy, Massachusetts 02269

- and -

John J. Davis, Esq. (BBO #115890)
*Counsel for John Oulette, Russell Jenkins, and Town of Braintree*
PIERCE, DAVIS & PERRITANO, LLP
Ten Winthrop Square
Boston, Massachusetts 02110

_____
Grace H. Lee, Esq.

19

# EXHIBIT

# A

1                              Pages: 1-95

2                              Exhibits: Two

3              UNITED STATES DISTRICT COURT

4                 DISTRICT OF MASSACHUSETTS

5

6   _____

7   RAYMOND SCOTT,

8            Plaintiff,

9   vs.                          CA NO. 01-10323-NG

10  MACY'S EAST, INC., KENNETH SANABRIA,

11  KIMBERLY JONES, JOHN OULLETTE,

12  RUSSELL JENKINS And the TOWN OF

13  BRAINTREE,                      📄 COPY

14           Defendant.

15  _____

16

17          DEPOSITION OF RUSSELL JENKINS, a witness

18  called for examination by Counsel for the Plaintiff,

19  pursuant to the Massachusetts Rules of Civil

20  Procedure, before Linda M. Ordway, Professional

21  Court Reporter and Notary Public in and for the

22  Commonwealth of Massachusetts, at The Law Offices of

23  Swomley & Associates, 83 Atlantic Avenue, Boston, MA

24  02210, on February 4, 2002, commencing at 10:10 a.m.

18

1      A.  Credit card theft is probably one of the

2  biggest crimes in the Town of Braintree.  I can only

3  say it occupies a lot of my investigators' time.

4      Q.  This is a familiar crime to you?

5      A.  Yes, it is.

6      Q.  And what are the indicia that you look for

7  with a stolen credit card?

8      A.  I'm sorry?

9      Q.  What typical fact patterns do you find in

10  a credit card case?

11      A.  Many of the issues described by Mr.

12  Sanabria.

13      Q.  What were those issues, if you can, could

14  just say?

15      A.  It's a common frenzy shopping.  People

16  come in and in a short amount of time they select

17  hundreds of dollars worth of merchandise.  I would

18  suggest that no one in this room here typically goes

19  to a department store with a companion other than a

20  spouse and says, "Here I will put those on my card

21  too."  That in and of itself is unusual.

22      Q.  Is that part of the pattern of frenzy

23  shopping?

24      A.  That is part of the frenzy shopping

1    Q.   Okay.  And did you follow him?

2    A.   No.

3    Q.   What happened after he went to Circuit

4  City?

5    A.   I stopped him when he came outside of

6  Circuit City.

7    Q.   Now, was there a reason you didn't come

8  into Lady Footlocker?

9    A.   Yes.

10    Q.   What was that?

11    A.   I didn't want to draw a crowd.

12    Q.   You felt this had the potential to draw a

13  crowd?

14            MR. BREEN:   Objection.

15    A.   It could have, yes.

16    Q.   What were you intending to do?

17    A.   Investigate the allegation or whatever you

18  want to call it; that the credit card was stolen;

19  the suspicion that the credit card was stolen.

20    Q.   How just in the abstract would you

21  investigate that?

22    A.   Identify the person in possession of the

23  credit card.

24    Q.   You talked to Watson.  Was Hutson present

1  conflicting statements about Trevor Watson's

2  involvement inside Macy's.  I still had the

3  inconsistency and that denial caused me to speculate

4  that maybe he is trying to divorce himself from the

5  actions in Macy's because it was illegal.  He then

6  denied being into the Champs store, which was in

7  direct conflict of what I was being told by the

8  security people.  Which I thought maybe something

9  illegal had been done in the Champs store.  Those

10  two suspicions.

11        I am not getting the credit card from Mr.

12  Scott.  He is thrusting it in my face and he won't

13  give it to me.  I don't have it many my hand.  He

14  was Raymond Scott or the credit card is a credit

15  card issued to Raymond Scott.  The reality that

16  throughout this whole endeavor was I was trying to

17  protect the interests of some guy named Raymond

18  Scott.

19        Q.  And whom you now know to be the man that

20  you arrested?

21        A.  That's correct.

22        Q.  You were not actually trying to protect

23  the interests of Macy's, were you?

24              MR. BREEN:  Objection.

1        MR. BREEN:  Objection.  Again, not a

2   question.

3        Q.  Can you explain what you mean by "real

4   people with real licenses"?

5        A.  My name is Russ Jenkins.  People have gone

6   to the registry with a name of Russell Jenkins and

7   walked out of there with a real driver's license

8   with the name of John Swomley on it.  That's what

9   was being done at the registry.

10       Q.  Why are you calling that a real license?

11  It seems to me it was a fake license.

12       A.  It's real because it's issued by the

13  Registry of Motor vehicles.

14       Q.  But you had no basis.  You might have had

15  a suspicion, but no basis to believe that's what

16  happened in this case, did you?

17       A.  No.  That's what this whole case was.  I

18  was trying to dispel my suspicions, and I was being

19  met with great resistance by Mr. Scott.

20       Q.  Did you tell Mr. Scott what you had

21  learned at that point?

22       A.  I already told you.  I had tried to talk

23  to him, but he kept asking me questions and would

24  not let me speak to him.  Mr. Scott, no, I was the